**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-4243

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

KENNETH ROBERT GODSEY,

Defendant - Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Bluefield.  David A. Faber, Chief District Judge.  (1:05-00114-001)

Argued: December 1, 2006      Decided: January 24, 2007

Before WILKINS, Chief Judge, WILKINSON, Circuit Judge, and Henry F. FLOYD, United States District Judge for the District of South Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Jonathan David Byrne, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant.  Miller A. Bushong, III, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Beckley, West Virginia, for Appellee.  **ON BRIEF:** Mary Lou Newberger, Federal Public Defender, George H. Lancaster, Jr., Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant.  Charles T. Miller, United States Attorney, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Kenneth Robert Godsey appeals his sentence for mailing threatening letters. See 18 U.S.C.A. § 876(c) (West Supp. 2006). Finding no error, we affirm.


I.

The act comprising the offense of conviction consisted of a letter mailed by Godsey to Kristi Rose in November 2004 in which Godsey threatened, in chilling terms, to come to Rose's home at night with his shotgun and shoot her and anyone else in her home. He told her, "I want you to fear me," and that his "intentions are cruel and to kill." J.A. 73 (internal quotation marks omitted). Godsey's misconduct was hardly limited to his offense of conviction, however. In December 2004, Godsey mailed Mercer County, West Virginia Prosecuting Attorney William J. Sadler a letter in which Godsey stated that he hoped Sadler would die and that he wanted to "bend [Sadler's wife] over and f*** her." Id. at 74 (internal quotation marks omitted). In April 2005, Godsey mailed a letter to United States Probation Office employee Jeanne Buckner in which he stated, "Someone like you needs to be f***ed before they get their brains blow[n] out, raped and murdered." Id. (internal quotation marks omitted). Also in April 2005, Godsey sent Dennis Lee, Special Assistant United States Attorney for the Western District of Virginia and Prosecuting Attorney for the

Commonwealth of Virginia, a letter telling him, "I'm coming after you, and I'm going to kill you." Id. at 75 (internal quotation marks omitted). In other letters to many women with whom Godsey was not acquainted--including many government officials and public servants--Godsey explicitly described sex acts that he wished to engage in with them. Godsey also left several harassing and sexually explicit voicemails for female United States Probation Office employees (one of whom was Buckner).

On June 2, 2005, a federal grand jury returned a three-count indictment charging Godsey with mailing threatening letters. Godsey pleaded guilty on October 4, 2005, via a written plea agreement, to Count One of the indictment. Even after pleading guilty, Godsey continued his pattern of misconduct, attempting to make seven collect calls to the Tazewell County, Virginia Prosecutor's Office and mailing a sexually explicit letter to a woman to whom he had previously sent several other such letters.

At sentencing, in calculating Godsey's guideline range, the district court used a base offense level of 12. See United States Sentencing Guidelines Manual § 2A6.1(a)(1) (2005). Finding no applicable enhancements or reductions, the district court determined that 12 was also Godsey's total offense level. This, with Godsey's Criminal History Category of IV, yielded a guideline range of 21-27 months imprisonment. The district court then departed upward on the basis that this range did not properly

account for the seriousness of Godsey's misconduct since it did not reflect any of Godsey's communications other than the single letter to Rose. See U.S.S.G. § 5K2.21, p.s. Thus, considering the factors that the court was required to consider under 18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2006), the district court imposed a sentence of 60 months imprisonment, the maximum penalty authorized under 18 U.S.C.A. § 876(c). The district court did not explicitly indicate whether it departed up to a range that included a 60-month imprisonment term, or rather, whether it departed to some lower range and then imposed a variance sentence.*

## II.

Godsey contends that his 60-month sentence was unreasonably long. We disagree.

In United States v. Booker, 543 U.S. 220, 244 (2005), the Supreme Court held that the Sixth Amendment right to a jury trial is violated when the district court, acting pursuant to a mandatory guidelines system, imposes a sentence greater than the maximum authorized by the facts found by the jury alone. To remedy this problem, the Court severed and excised the provisions of the

---

*We note that, at the time of Godsey's sentencing hearing, although United States v. Booker, 543 U.S. 220 (2005), had already been decided, the district court did not have the benefit of our decision in United States v. Moreland, 437 F.3d 424, 432 (4th Cir.), cert. denied, 126 S. Ct. 2054 (2006), which would have made the proper procedure clear.

Sentencing Reform Act, <u>see</u> Sentencing Reform Act of 1984, Pub. L. No. 98-473, ch. II, 98 Stat. 1987-2040 (1984) (codified as amended at 18 U.S.C.A. §§ 3551-3742 (West 2000 & Supp. 2006) and at 28 U.S.C.A. §§ 991-998 (West 1993 & Supp. 2006)), that mandated sentencing and appellate review in conformance with the guidelines. <u>See</u> <u>Booker</u>, 543 U.S. at 259 (severing and excising 18 U.S.C.A. § 3553(b)(1) (West Supp. 2006) and 18 U.S.C.A. § 3742(e) (West 2000 & Supp. 2006)). This excision rendered the guidelines "effectively advisory," <u>id.</u> at 245, and replaced the previous standard of review with review for reasonableness, <u>see</u> <u>id.</u> at 261.

This court has previously described the necessary procedure for imposing sentence under the now-advisory sentencing guidelines:

> First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range. Next, the court must determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence within statutory limits that does serve those factors. In doing so, the district court should first look to whether a departure is appropriate based on the Guidelines Manual or relevant case law.... If an appropriate basis for departure exists, the district court may depart. If the resulting departure range still does not serve the factors set forth in § 3553(a), the court may then elect to impose a non-guideline sentence (a "variance sentence"). The district court must articulate the reasons for the sentence imposed, particularly explaining any departure or variance from the guideline range. The explanation of a variance sentence must be tied to the factors set forth in § 3553(a) and must be accompanied by findings of fact as necessary. The district court need not discuss each factor set forth in § 3553(a) in checklist fashion; it is enough to calculate the range accurately and explain why (if the sentence lies outside it) this defendant deserves more or less.

<u>United States v. Moreland</u>, 437 F.3d 424, 432 (4th Cir.), <u>cert. denied</u>, 126 S. Ct. 2054 (2006) (citations, internal quotation marks, & alterations omitted). We review a sentence for reasonableness, considering "the extent to which the sentence ... comports with the various, and sometimes competing, goals of § 3553(a)." <u>Id.</u> at 433.

Although the numerous other threatening or harassing communications for which the district court found Godsey responsible were not part of the offense of conviction or relevant conduct, the guidelines specifically authorize a departure based on that conduct. <u>See</u> U.S.S.G. § 5K2.21, p.s. And, the presentence report had not only reported the other misconduct but also observed that "the Court may consider an upward departure" to account for it. J.A. 85. Indeed, the presentence report estimated that had Godsey been convicted of all three charged counts, his offense level would have been 20, which, when considered with Godsey's Criminal History Category, would have yielded a guideline range of 51-63 months.

In selecting a term of 60 months, the district court explicitly considered the seriousness of the offense of conviction by noting the "aggravated nature" of Godsey's conduct, including the "despicable and disgusting" language that he used to ensure that his threats and harassment achieved maximum effect on his victims. <u>Id.</u> at 54, 58. The district court specifically noted

6

that Godsey's continued pattern of reprehensible conduct, even after pleading guilty, required a sentence necessary to "incapacitate[ him] from further crimes of this nature" and "to deter conduct of this nature" by Godsey and others. Id. at 58. The district court also noted that the length of the sentence would provide Godsey additional time to rehabilitate himself.

Godsey maintains that his 60-month sentence was unreasonable because "the policy choices of the Sentencing Commission, reinforced by Congress, were that an offense level of 12 [and a corresponding guideline range of 21-27 months imprisonment] adequately represents the seriousness of Godsey's offense." Br. of Appellant at 17. This argument plainly fails to recognize, however, that U.S.S.G. § 5K2.21 specifically authorizes district courts to depart upward based on dismissed and uncharged conduct not reflected in the applicable guideline range. The analysis employed by the district court here was eminently sound, and the 60-month sentence was reasonable in light of the § 3553(a) factors.

## III.

Godsey also argues that the district court erred in imposing a sentence above the range of 21-27 months without previously providing notice of its intent to do so. We disagree.

Rule 32(h) of the Federal Rules of Criminal Procedure provides that "[b]efore the court may depart from the applicable sentencing

7

range on a ground <u>not identified for departure</u> either <u>in the presentence report</u> or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure." Fed. R. Crim. P. 32(h) (emphasis added). We have held that Rule 32(h) applies to variances as well as departures. <u>See</u> <u>United States v. Davenport</u>, 445 F.3d 366, 371 (4th Cir. 2006).

Godsey contends that the statement in the presentence report that "the Court <u>may</u> consider an upward departure in sentencing to consider the seriousness of underlying charges that are dismissed pursuant to the plea agreement that did not enter into the determination of the applicable guideline range" did not satisfy Rule 32(h) because it did not constitute a <u>recommendation</u> that the district court actually depart. J.A. 85 (emphasis added). Godsey's reasoning is misplaced. The role of the presentence report is not to decide on which bases, if any, the district court <u>should</u> depart, but rather, merely to "identify any basis for departing." Fed. R. Crim. P. 32(d)(1)(E). Fulfilling this role adequately places the defendant on notice of the bases on which the district court may depart. <u>See</u> <u>Burns v. United States</u>, 501 U.S. 129, 137 (1991) (explaining that the purpose of Rule 32 is "promoting focused, adversarial resolution of the legal and factual issues relevant to fixing Guidelines sentences"). No further notice is required.

8

IV.

In sum, for the foregoing reasons, Godsey's sentence is affirmed.

AFFIRMED